## MAGGIE HALL FORRESTER *v.* WM. FORRESTER.

[57 South. 553.]

DIVORCE.  *Condonation.  Friendly correspondence.*

> Where in a suit for divorce by the wife there is ample evidence
> of cruel treatment by the husband extending over several years,
> a divorce should not be denied because the wife after such
> treatment wrote her husband a friendly letter.

APPEAL from the chancery court of Monroe county.
HON. J. Q. ROBINS, Chancellor.

Suit for divorce by Maggie Hall Forrester against
Wm. Forrester.  From a decree denying the divorce,
complaint appeals.

The appellant brought suit against appellee for di-
vorce, and obtained a decree in her favor carrying ali-

mony. Afterwards a petition was filed by appellee to set aside the decree on the ground that appellee had never been served with summons. After hearing proof, the court set aside the decree and proceeded to a new hearing of the case. Upon hearing the proof, the court denied appellant a divorce. The letter alleged to have been written by appellant to appellee January 7, 1910, referred to in the opinion, is as follows:

"My address is Aberdeen, Miss., R. No. 5.

"Aberdeen, Miss., Jan. 7, 1910.

"Dear Bill: I will write you a few lines; Allie said you said write you so I will, it is so bad I can't take the baby to town but when the weather gets good I am going to Aunt Julia Gallop's to stay few days and I will let you know so you can come and see her and me if you want to, don't ever come over here any more. You know how Papa is when he gets mad at any one so you shall see the baby and I will talk to you. Also write me if you got home alright and don't tell nobody I wrote this to you and when I know I can be in town I will also let you know, don't ever come till I let you know. God in heaven knows if you only had done right we would have been together now and none of this would ever happened. I pray for you night after night but don't think of the past and nothing that happened over here. I want to talk to you and will if I ever have the chance. Write me if you got home, I hated to see you go back but I could not help it. Reba said for me to write and see if her dady got home that night, it was so bad. So be good and write to me soon. May God bless you. M. F. Burn this up and don't let anybody see it for my sake."

*Paine & Paine* for appellant.

Cruel and inhuman treatment, does not necessarily involve the proof of personal violence. The treatment must be habitual, cruel, but not habitual personal violence.

The case of *Johns* v. *Johns,* 57 Miss., is in point. The case of *Pierce* v. *Pierce,* 38 So. 46, states the rule in this state, and says personal violence is not required in order to constitute such cruel and inhuman treatment as will authorize the granting of a divorce.

*Leftwich & Tubb* for appellee.

We now come to the correspondence between appellant and her husband which we submit shows clearly that she is still attached to him, and all that is needed for them to resume their relations is a little time and an opportunity for her to get from under the domination of her father. It will be observed that in January, 1910, the same month in which the first decree for divorce was taken without notice, and only a short time before the decree was taken, Forrester rode from Smithville to the home of his father-in-law who was then living on Mr. Plant's place near Prairie, some thirty miles, to see his wife, that he did see his baby and that he tried to see his wife, and that she made an engagement to see him but that her father intervened. On the 7th of January, 1910, she wrote her husband this letter:

"My address is Aberdeen, Miss. R. No. 5.

ABERDEEN, MISS., January 7th, 1910.

Dear Bill, I will write you a few lines; Allie said you said write you so I will, it is so bad I can't take the baby to town but when the weather gets good I am going to Aunt Julia Gallop's to stay a few days and I will let you know so you can come and see her and me if you want to, don't ever come over here anymore. You know how papa is when he gets mad at any one, so you shall see the baby and I will talk to you. Also write me if you got home alright and don't tell nobody I wrote this to you and when I know I can be in town I will also let you know, don't ever come till I let you know. God in heaven knows if you only had done right we would have been together now and none of this

would ever happened. I pray for you night after night but don't think of the past and nothing that happened over here. I want to talk to you and will if I ever have the chance. Write me if you got home, I hated to see you go back but I could not help it. Reba said for me to write and see if her dady got home that night, it was so bad. So be good and write me soon. May God bless you. M. F. Burn this up and don't let nobody see it for my sake.''

'SMITHVILLE, MISS., Jan. 15, 1910.
Mrs. Maggie Forrester:

I will try to answer your letter, I had a bad time coming home when I was over there but got home all right. It rained all day on me the day I was there and sleeted on me next day. I never have told nobody that I ever went over there and don't expect for nobody to know anything about it. I want you to let me know when you can go to our aunt Julies and I will come to see the baby and will talk to you. I will not write much now but will tell you what I want you to know when I see you. I would love to see you and Reber the best in the world. So I will quit hoping to hear from you soon. Write soon, from W. E. Forrester.''

We submit that this letter written by Mrs. Forrester in which she took the initiative and in which she proposed going visiting at the home of her aunt, Mrs. Gallop, near Cotton Gin and not far from where Forrester lived, and where he could see her and the baby, shows her innermost thoughts and love for her husband.

Single acts of cruelty do not entitle the wife to a divorce. *Johns* v. *Johns,* 57 Miss. 530. 9 A. & E. Enc. Law (2 Ed.), 812, 14 Cyc. 601. Not only must it be true that a single cruel act even if proven will not grant a divorce, but there must be in addition repeated acts of cruelty reasonable apprehension of its repetition or of bodily harm in the future. *Kenley* v. *Kenley,* 2 Howard, 751. In passing upon the ground of divorce, the

court must view the general conduct of the parties. 14 Cyc. 601.

We do not deem it necessary to further quote authorities, but we submit to the court, that from this whole record, from beginning to end, the decree of the chancellor dismissing the bill of appellant was clearly right. There was not only no sufficient ground for sustaining the bill as is shown by the record, but, as we submit, the record clearly shows that this woman and man are still attached to and love each other, and that there is abundant ground to believe that they will if left unhindered resume their marital relations, and jointly rear the little child which was born to their union.

Argued orally by *Geo. C. Paine*, for appellant and *G. J. Leftwich*, for appellee.

WHITFIELD, C.

We concur in the conclusion reached by the chancellor that the first decree for divorce should be set aside; but, after careful consideration of the whole record on the merits, we are constrained to differ from him in denying the divorce and dismissing complainant's bill. The marked ability of the learned chancellor would constrain an affirmance, if. we were not throughly satisfied from the whole evidence and by the deductions to be drawn from it that the complainant has satisfactorily made out her case. The testimony is not limited to a single act of violence, but covers their relations and his treatment of her for several years. That he struck her is certainly clearly established, and the blow was so severe as to blacken the arm and cause it to remain so for about a week or more. It seems clear, too, that in his rage he broke up and destroyed certain trinkets and toys that had belonged to their dead child. She had left him once before, but had returned in the hope of being able to live with him; and the evidence, we think,

makes it plain that she left the second time in great fear of what he might do to her if she should remain. All the testimony relative to his cursing her, and his conduct in respect to taking home things which belonged to her, and the return of which she secured only after a vigorous suit at law, coupled with many other circumstances scattered through the record, such as, for example, making her work barefooted in the field, makes it seem to us certain that justice required the granting of the divorce.

We are impressed with the idea that the chancellor must have given too much weight to the letter which the wife was alleged to have written to her husband. The sum and substance of her testimony as to whether she wrote the letter was that she would not testify positively that she wrote it, or did not write it; that she may have written it, but she did not believe she had done so. Even if she had written the letter, as seems most probable, that fact does not negative the treatment of her by him in the past, which the evidence abundantly shows. That treatment is not such as holds out much hope of better relations in the future, should the divorce be denied and the parties united again. The question is, not whether that letter was written or not, but whether, on the whole case, she was entitled under the statute to the divorce. We think she was.

As the bill calls for alimony, no decree will be entered here, but the cause will be remanded.

Per Curiam. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the decree setting aside the first decree for divorce is affirmed; but the decree denying the divorce on the second hearing and dismissing complainant's bill is reversed, and the cause is remanded, to be proceeded with in accordance with this opinion.

*Reversed and remanded.*